Day, J.
 

 The errors complained of in this record may be grouped under three heads: (1) Error as to the claimed defense of insanity; (2) error as to the exercise of peremptory challenges by the state; and (3) error as to the failure of the court to charge on self-defense.
 

 As to the defense of insanity, in homicide cases the line of demarcation between such defense and that of drunkenness is clearly defined. In the case of
 
 Long
 
 v.
 
 State,
 
 109 Ohio St., 77, at page 86, 141 N. E., 691, 694, it is said:
 

 “It is well established in American jurisprudence that drunkenness is not a defense to crime. When all the elements of a criminal act have been proven, the accused will not as a general rule be heard to allege his voluntary intoxication as an excuse. It is an exception to this general rule that one who is accused of a crime, the definition of which involves some specific intent, or the operation of other mental processes, intoxication, though voluntary, may be considered in determining whether or not the act was intentional, or, as in cases of first degree murder, involving the element of deliberation and premeditation, the fact of intoxication may be con
 
 *195
 
 sidered to determine whether deliberation and premeditation existed.”
 

 This principle has been recognized in Ohio in
 
 Nichols
 
 v.
 
 State,
 
 8 Ohio St., 435;
 
 Davis
 
 v.
 
 State,
 
 25 Ohio St., 369;
 
 Cline
 
 v.
 
 State,
 
 43 Ohio St., 332, 1 N. E., 22. See, also, 36 L. R. A., 470; 13 L. R. A. (N. S.), 1024; 12 A. L. R., 869; 23 A. L. R., 438—where the cases are collated upon the subject.
 

 From the foregoing citations it. is deducible that the decisions are quite uniform to the effect that voluntary intoxication is no defense to crime. It may affect, however, the degree of a homicide and have a bearing upon the question of intent, premeditation, and deliberation.
 

 Coming now to the consideration of the question of insanity, a different rule prevails; and settled insanity, which becomes fixed and established as a diseased condition of the mind, produced by habitual intoxication, affects criminal responsibility in the same way as insanity produced by any other cause. The distinction is well stated in the case of
 
 Cheadle
 
 v.
 
 State,
 
 11 Okl. Cr., 566, 149 P., 919, L. R. A., 1915E, 1031:
 

 “The defense was based on two theories. One that Jim Helms, the state’s chief witness, did the ■shooting; and the other that the defendant was temporarily insane if in fact he fired the fatal shot," and the homicide, was excusable by reáson of his insanity. In the instructions given, the court, submitted the issue of murder and the defense of insanity. We are of the opinion that, on the undisputed facts, the issue of insanity.was not raised by the evidence. Alcoholic insanity, or mental incapacity produced by voluntary intoxication, existing only temporarily at
 
 *196
 
 the time of the commission of the homicide, is no excuse or defense in a prosecution therefor. Drunkenness is one thing, and the disease of the mind to which drunkenness leads is a different thing. Temporary insanity, occasioned immediately by drunkenness, does not destroy responsibility for crime, where the - defendant, when sane, and responsible, voluntarily makes himself drunk. To constitute insanity, caused by intoxication, a defense to an indictment or information for murder, it must be insanity caused by chronic alcoholism, and not a mere temporary mental condition. The distinction between a fit of drunken frenzy or madness, commonly called ‘delirium tremens,’ and temporary .delusional insanity, a disease caused by excessive and long-continued indulgence in alcoholic liquors, technically called ‘delirium tremens,’ or
 
 ‘mania a potu/
 
 is well defined by the authorities and text-writers.
 

 “See
 
 State
 
 v.
 
 Kidwell,
 
 62 W. Va., 466, 13 L. R. A. (N. S.), 1024, 59 S. E., 494; Wharton
 
 &
 
 Stille’s Medical Jurisprudence, Section 940.
 

 “The principle is everywhere recognized that voluntary intoxication is no justification or excuse for crime, and is no excuse for homicide, though carried to the extent of producing incapacity to control the mind and will, while intoxication does not excuse homicide, it may produce a state of mind in which one is incapable of forming a design to take life, and evidence of intoxication is admissible only as bearing upon the existence or nonexistence of malice.
 
 Miller
 
 v.
 
 State,
 
 9 Okl. Cr., 55, 130 Pac., 813.”
 

 Also in
 
 State
 
 v.
 
 Kidwell,
 
 62 W. Va., 466, 59 S. E., 494, 13 L. R. A. (N. S.), 1024:
 

 “A person who, being sane and responsible for
 
 *197
 
 Ms acts, voluntarily becomes intoxicated, with or without a preconceived design to commit murder or other crime, and while intoxicated, though it be to such a degree as to render him wholly oblivious to his acts or conduct, commits a homicide or does any other act which, if done by a person capable of distinguishing between'right and wrong, is criminal, if not excused or justified in some way, is held responsible by the law for his act, notwithstanding his mental condition at the time. * * *
 

 “Insanity, though superinduced by long-continued indulgence in intemperance or intoxication and known as delirium tremens, or
 
 mania a potu,
 
 renders the person so afflicted irresponsible for his acts, if it be of such character as to deprive him of the power to distinguish between right and wrong, whether he be under the influence of liquor at the time of the commission of the' act or not; but, to do so, his affliction must be settled or fixed insanity, not a mere fit of drunkenness. A person, not previously laboring under such diseases or affliction, who voluntarily becomes intoxicated to such an extent and for such a period of time as to cause unconsciousness of his acts and affliction with delusions and hallucinations, is not irresponsible under the law for the acts done by him while in such mental condition,
 

 “The accused on the trial of an indictment for murder is not entitled to an instruction, propounding the inquiry as to whether he was insane at the time of the killing, if the evidence adduced by him to sustain such defense lacks tendency to show mental unsoundness antedating the drunken spree, in the course of which the killing was done, and also to show that intoxication had ceased and settled insan
 
 *198
 
 ity ensued, as a result of habitual indulgence in intoxication. ’ ’
 

 The case of
 
 Director of Public Prosecutions
 
 v.
 
 Beard,
 
 [1920] L. R., A. C., 479, 12 A. L. R., 846, decided by Lord Birkenhead in the House of Lords, contains an elaborate discussion of the English cases bearing upon the subject, and the notes by the editors of the American Law Reports give an exhaustive summary of the American cases, appearing on pages 861 and 895 of the report cited. See, also,
 
 State
 
 v.
 
 O’Neil,
 
 51 Kan., 651, 33 P., 287, 24 L. R. A., 555;
 
 State
 
 v.
 
 Habb,
 
 105 La., 230, 29 So., 725.
 

 With these distinctions in mind, what does the record in this case show? In the opening statement of counsel on behalf of the accused, he claimed the defendant was “mentally befogged,” “mentally deranged,”- in a state of “irrational mind,” of “unsound mind,” “that he knew not and did not have the faculty of a-reasoning brain,” “that he did not have the power to know right from wrong,” “did not have the power to know what acts he was doing or the acts which he is alleged to have committed,” and that “prior to the homicide his habits were good and his character was good.”
 

 Further, the record discloses that a request for instruction to the jury, both before and after argument, was made by counsel for the accused, to the effect:
 

 “If you find that the defendant was insane at the time of the commission of the crimes alleged in the first and second counts of the indictment, you must find the defendant not guilty on the sole ground of insanity.”
 

 The record also discloses that during the progress
 
 *199
 
 of the trial considerable colloquy took place between court and counsel as to this claimed defense of insanity; counsel for the accused stating that “our defense is both
 
 drunkenness
 
 where he cannot tell right from wrong, and
 
 drunkenness
 
 so that the man was insane.” “We want to raise two defenses in this case: First,
 
 drunkenness
 
 where he cannot tell right from wrong; second,
 
 drunkenness
 
 where he was insane.”
 

 It was the position of the trial judge that the defense of insanity was not in the case, but that it was a defense based upon a mental condition due to voluntary intoxication.
 

 This request for instruction before argument was refused, and the court was not required in a criminal case to give such requests before argument,
 
 Wertenberger
 
 v.
 
 State,
 
 99 Ohio St., 353, 124 N. E., 243;
 
 Blackburn
 
 v.
 
 State,
 
 23 Ohio St., 146. In the general charge, however, the court did instruct as follows :
 

 “If the defendant was suffering from an attack of the delirium tremens or total deprivation of his mental faculties, superinduced by intoxication,
 
 this exempts the defendant from responsibility for crime, like insanity produced by any other cause.”
 

 Certain lay witnesses were called by the accused, and were asked whether in their opinion Rucker was of sound or unsound mind at the time of the homicide. Both of these witnesses had described the appearance of Rucker, so that the jury were fully advised of what the witnesses observed of the defendant. The witnesses were not asked whether they were able to express an opinion on the subject, and were not qualified as lay expert witnesses usually are. The
 
 *200
 
 jury had the full benefit of all the facts upon which such opinion would be expressed, and doubtless were as able as the witnesses to form an opinion thereon. “The determination of the question whether a particular nonexpert witness is sufficiently qualified to express ah opinion on the mental condition of another is necessarily to. a great extent within the sound discretion of the trial court.” 16 Corpus Juris, 752;
 
 State
 
 v.
 
 Barry,
 
 11 N. D., 428, 92 N. W., 809;
 
 Jones
 
 v.
 
 State,
 
 181 Ala., 63, 61 So., 434;
 
 Maulding
 
 v.
 
 Commonwealth,
 
 172 Ky., 370, 189 S. W., 251.
 

 While profert of the answer of the witnesses, to the effect that they would say the accused was of unsound mind, was made, we do not think that under the issues of the case the accused was prejudiced by failure to permit the two witnesses in question to express their opinion. The entire record shows that the defense was that of voluntary intoxication, affecting the mental processes of the accused, and not insanity. There was no testimony in the case tending to show any insanity or unsoundness of mind in the accused prior to the date of the homicide, nor was there any history of insanity in his family. On the contrary, the testimony tended to show that the accused was of good health and of good habits, and we can find nothing in the record which shows any taint of insanity, either in himself or his family, prior to the homicide.
 

 We are unable to reach the conclusion that insanity as a defense to this homicide was shown to exist by this record. Rather is it a case of acute alcoholism, as testified to by the physicians who treated Rucker for his wounds, at the hospital, after his arrest; and such mental incapacity as he suffered
 
 *201
 
 was rather that of voluntary drunkenness and not insanity.
 

 As above indicated, the defendant did not seek to take advantage of Section 13608, General Code (112 ‘Ohio Laws, 168), and no steps were taken thereunder. It therefore must follow that this court may not pass upon the constitutionality, nor determine-what the rights of the accused might have been under such section had the same been invoked. None of the terms of the statute being before the court for consideration, it follows that there is no question for this court to determine arising therefrom. The rule is well stated in Cooley’s Constitutional Limitations (8 ed.), 338:
 

 “Neither will a court, as a general rule, not pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause.”
 

 Upon a full examination of the record as to the question of the insanity of the accused, we find no reversible error.
 

 Second, as to the claimed error in the matter of peremptory challenges, the record shows that, upon the opening of the trial, counsel for the accused inquired of the court:
 

 “What is your honor’s wish in the matter of challenges; one to four?
 

 “The Court: Yes, one to four.”.
 

 The trial proceeded, and later on it developed that the state had not exercised its peremptory challenges upon all occasions when the defendant had exercised four, but that upon inquiry by the court of counsel for the state reply was made that there was no per
 
 *202
 
 emptory challenge to be exercised at that particular time; that is to say, the state passed its peremptory challenge, but did not waive its right thereto. A controversy arising with reference to the right of the state to further challenge peremptorily, having once passed the exercise thereof, the court said:
 

 “The order of challenges is simply a matter of convenience, rather than preclusion, and the state of Ohio grants the defendant sixteen peremptory challenges, and the state four challenges, and it is merely to expedite matters that the order is set down. It is entirely within the discretion of the court; the statutes of our state set down the number of peremptory challenges, and either side cannot be precluded from exercising those. * * * The law of Ohio gives the state four challenges, and the mere matter of rotation is done to expedite the selection of the jurors; that is all it is done for, because the defendant has so many more challenges than the state, and it is merely to expedite the selection of the jury.”
 

 The court further said:
 

 “About the law of Ohio being, they are entitled to four. It is entirely within the discretion of the court; and the order of challenges is entirely discretionary. * * * You cannot preclude the state from exercising their challenges any more than they could preclude you (the defendant’s counsel) from exercising your statutory rights.”
 

 The foregoing excerpts from the record, disclose the position of the trial court in overruling the objection of the defendant to the exercise of peremptory challenges by the state after it had passed, but not waived, such challenge.
 
 We
 
 are cited to the case
 
 *203
 
 of
 
 Lyon
 
 v.
 
 State,
 
 116 Ohio St., 265, 155 N. E., 800. It is to be noted, however, that in that case a somewhat different rule was indicated by the trial court than in the case at bar, and we find nothing in that case which justifies a reversal herein. It is said in the opinion by Kinkade, J., at page 273 (155 N. E., 802):
 

 “The time at which and the manner in which peremptory challenges shall be exercised in the trial of a criminal case is not fixed by statute, and where it is hot so fixed the right must be controlled by the exercise of a sound judicial discretion by the trial judge. The rule has been well stated by the Supreme Court of the United States in the case of
 
 Pointer
 
 v.
 
 United States,
 
 151 U. S., 396, 410, 14 S. Ct., 410, 415 (38 L. Ed., 208), as follows: ‘But the general rule is, that where the subject is not controlled by statute, the order in which peremptory challenges shall be exercised is in the discretion of the court.”
 

 We think the trial court was within the rule above indicated. Entertaining such view, we find no reversible error in the matter of The peremptory challenges.
 

 Third, was the court’s failure to charge on self-defense prejudicial to the accused?
 

 In the first place, the record discloses no request on the part of counsel for Rucker for such charge. The court’s attention was in no wise directed to the subject of the claimed defense of self-defense. At the conclusion of the general charge, the court inquired of counsel: “Is there anything that counsel have to suggest?” In reply thereto, no reference is made to self-defense. The only subject mentioned
 
 *204
 
 by counsel for the accused was that of the claimed defense of insanity.
 

 “Under the long-established rule of Ohio, when the court omits to charge upon a feature of the law applicable to the evidence, the defendant, in order to predicate reversible error upon the court’s omission, should call the court’s attention to that point and make a specific request for such instructions. Since such action was not taken in this case, the objection in this court is not tenable.”
 
 Scott
 
 v.
 
 State,
 
 107 Ohio St., 475, 497, 141 N. E., 19.
 

 See, also,
 
 State
 
 v.
 
 McCoy,
 
 88 Ohio St., 447, 103 N. E., 136.
 

 Further, however, the record does not justify a charge of self-defense, as it clearly appears that the accused, after discovering the officers and realizing that they were such and about to arrest him, opened fire upon them with a shotgun, wounding Officer Yearion; and the actions of the accused thereafter were all along the line of escaping and resisting arrest. We can see no occasion for applying the law of self-defense, and the trial court was right in not charging thereon.
 
 ,
 

 Upon a careful examination of the record and the briefs in the case, while we are impressed with the diligence of counsel in the discharge of their duty intrusted to them by the court in their appointment to appear for the defense of the accused, we are unable to find any prejudicial error justifying a reversal of this judgment. It therefore follows that the judgment of the Court of Appeals should be, and it hereby is, affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Allen, Kjnkade, Robinson, Jones and Matthias, JJ., concur.