Hart, J.
These are appeals from decisions of the Board of Tax Appeals affirming orders of the Tax Commissioner assessing highway use taxes against motor carriers of Michigan operating in Ohio.
The appellants attack the assessments made against them pursuant-to the provisions of the Highway Use Tax Act (Sections 5728.01 to 5728.15, inclusive, Revised Code), and the decisions of the Board of Tax Appeals validating such tax, on the claimed ground that the tax is illegal, excessive, discriminatory *127 and in violation of constitutional guaranties. Specifically, the appellants, among other things, variously claim:
That there is presently in force and effect a reciprocity agreement between the state of Ohio and the state of Michigan, under date of October 26, 1937, which provides that motor vehicles, trailers, or semitrailers owned and registered elsewhere and engaged in commercial transportation shall be operated in the state of Ohio without the payment of any highway use tax.
That the assessments by the Tax Commissioner and the collection of the taxes imposed thereby impair the obligation of the reciprocal agreements, hereinbefore referred to, between the state of Ohio and other states, in violation of Section 10 of Article I of the Constitution of the United States and Section 28 of Article II of the Constitution of Ohio.
That the Board of Tax Appeals erred in finding that the Tax Commissioner’s jurisdiction and authority to refund highway use taxes is limited to the provisions of Section 5728.06, Revised Code.
Effective June 30, 1933, Section 6306-1, General Code, provided in part:.
“The Attorney General, the Director of Highways and a member of the Public Utilities Commission, designated by the commission for that purpose, are hereby authorized and empowered to enter into such reciprocal contracts and agreements as they may deem proper or expedient with the proper authorities of adjoining states, regulating the use, on the roads and highways of this state, of trucks and automobiles and any other motor vehicles owned in such adjoining states, and duly licensed under the law thereof.”
Pursuant to Act 185 of Michigan Public Acts of 1937, and pursuant to Sections 614-94, 614-112, 6306 and 6306-1, General Code, a reciprocity agreement with respect to the operation of motor carriers operating between the two states was entered into through their proper officers, Ohio being represented by the Attorney General, Director of Highways and a designated member of the Public Utilities Commission, such officials being hereinafter called the reciprocity board, as authorized by Section 6306-1, General Code, as of October 26, 1937, which agreement provides, among other things:
*128 “In order to facilitate motor vehicle movements in interstate commerce between and through their combined geographical territories, the state of Ohio, with respect to the interstate commerce operations of Michigan motor carriers within Ohio territorial limits * # * agree that when such outstate carriers have secured reciprocity exemption cards or plates * * * then they, the said states, shall to the extent of granted exemptions, severally waive and forego f # * payment by their respective outstate motor carriers of the license plate taxes, including weight taxes for motor vehicles, and also mileage fees for their operations, including Ohio taxes levied under the provisions of Sections 614-94, 614-112, 6291, 6292 and 6293, and any connected provisions of the Ohio General Code, or which may be levied or payable in lieu of such provisions * * (Italics supplied.)
By the terms of the agreement it is to continue until December 31, 1937,, and “thereafter until this * * * agreement shall be * * * terminated by either on written notice first to be given to the other, of intent to terminate.” It is agreed by the parties that the agreement is still in force and effect between the two states. In fact, it is the only agreement by which the two states recognize each other’s license plates up to the present time. Incidentally, it is conceded that the Michigan carriers involved in the instant cases are licensed by and have complied with the motor vehicle laws of the state of Michigan and no question is raised that the two states in question have the power to enter into such reciprocity agreements. It is also conceded that since the execution of the reciprocity agreement above referred to, Michigan residents operating motor vehicles in their own state have paid a third structure tax, to wit, mileage fees along with their license fees but Michigan has not imposed this tax on Ohio owners of motor vehicles operating them in the state of Michigan.
Section 5728.06, Revised Code, which levies the tax in question, provides:
“For the purpose of providing revenues to pay * * * the state’s share of the cost of constructing or reconstructing highways and eliminating railway grade crossings on the major thoroughfares of the state highway system * * * there is hereby levied a highway use tax upon each commercial car with three *129 or more axles, each commercial car used as part of a commercial tandem and each commercial tractor used as part of a commercial tractor combination or commercial tandem at the following rates, to wit: (1) one-half cent for each mile traveled in Ohio by each commercial car with three or more axles * * *; (2) one cent for each mile traveled in Ohio by a commercial tractor * * * with a maximum of three axles; (3) one and one-half cents for each mile traveled in Ohio by a commercial tractor * * * with a maximum of four axles; (4) two cents for each mile traveled in Ohio by a commercial tractor * * * with a total of five or more axles; (5) two and one-half cents for each mile traveled in Ohio by each commercial car or commercial tractor * * * as part of a commercial tandem with four or more axles.”
The controversy before the court is whether the 1937 reciprocity agreement between Ohio and Michigan exempts Michigan commercial carriers operating in Ohio from the highway use tax. The appellants contend that such tax can not be the basis of valid assessments against them because they are protected by the exemption provided by the reciprocity agreement between Ohio and Michigan.
The Tax Commissioner took the position that it was unnecessary to determine the validity of the 1937 reciprocity agreement between Ohio and Michigan, since by the provisions of Section 5728.15, Revised Code, the Ohio General Assembly has provided an exclusive method by which reciprocity agreements relating to this type of tax may be effected and by which tax refunds may be made and that such statute supersedes any existing reciprocity agreements on the subject which may be in effect between Ohio and sister states.
In case No. 34218, Chairman Kirwin of the Board of Tax Appeals, after reciting in his opinion the facts leading up to the Tax Commissioner’s refusal to refund the taxes demanded by appellant, said:
“Appellant’s contention that the Tax Commissioner’s refusal to rule that the October 26, 1937, reciprocity agreement exempted its Michigan licensed and certificated motor carriers from the highway use tax tends to impair the obligation of contracts, constitutes a denial of due process of law, and otherwise *130 violates the Constitution of the United States is without merit. Such constitutional questions were not properly béfore the Tax Commissioner for determination, nor are they properly before us for determination. If the' Tax Commissioner lacks jurisdiction and authority to issue the refund order requested by appellant he would be engaging in idle speculation if he attempted to decide such constitutional questions.
“In this connection it might be observed that the Tax Commissioner as a tax administrator and the Board of Tax Appeals as an administrative and quasi-judicial tribunal will not assume jurisdiction and authority to consider and determine such constitutional questions, even if seasonably raised by appellant. See National Distillers Products Corp. v. Glander, 49 Ohio Law Abs., 330, 337; Hillsborough Township v. Cromwell, 326 U. S., 620, 625, 90 L. Ed., 358, 364; Schwartz v. Essex County Board of Taxation, 120 N. J. L., 129, 132, affirmed 130 N. J. L., 177. * * *
“Appellant’s contention that the provisions of the Revised Code Section 5728.15 make it mandatory that the Ohio Attorney General, Ohio Tax Commissioner and the designated member of the Public Utilities Commission of Ohio enter into a reciprocity agreement with the Reciprocity Board of the state of Michigan surely can not be resolved by the Tax Commissioner or the Board of Tax Appeals. If there has been any failure of the Ohio reciprocity board [to] perform an act made mandatory by statute the remedy of appellant is by way of a mandamus action in a court of competent jurisdiction. ’ ’
Vice-Chairman Sherick of the Board of Tax Appeals in a concurring opinion said:
“The issue presented in this cause, as I see it, rests squarely upon one point. All other collateral matters are but incidental thereto and embodied therein. The question is: Does the Ohio highway use tax of 1953, as construed and applied by the Tax Commissioner, impair the obligation of the reciprocity agreement of 1937 still existing between the state of Ohio and the state of Michigan?
t ( * * #
“Appellant contends that ‘the interpretation which the Attorney General requests this board to adopt would be unconsti *131 tutional in that it would amount to the taking of property without due process of law.’ Whether this act abridges and limits the jurisdiction of the Tax Commissioner theretofore conferred by General Code Section 1464-3 (now Revised Code Section 5703.05), whether the terms of the reciprocity agreement embrace therein the kind of tax imposed by the act, whether the reciprocity commission created by the act has acted or not, are all questions going to the matter of legality or illegality of the tax imposed, which is sought to be recovered by the appellant, all of which are embodied in the principal issue.
“Since the issue presents a constitutional question, and this board has no jurisdiction in such matters, the order complained of should be affirmed, and the way opened for an appeal to a tribunal possessed of such jurisdiction. For the reason noted the order appealed from should be affirmed. ’ ’
Member Pickens of the Board of Tax Appeals dissented and, in an opinion, said:
“The facts are clear that with proper authority the state of Michigan and the state of Ohio entered into a valid reciprocal agreement on October 26, 1937 * * *.
“The Attorney General, representing the Tax Commissioner, the appellee herein, had this to say in his brief:
“ * * the agreement of 1937 between Michigan and Ohio has no effect on reciprocity as to highway use taxes and since there have been no agreements executed under statutory reciprocity authorized in the Highway Use Tax Act, the appellant’s claim that it is entitled to reciprocity of highway use taxes is without merit.’
“I cannot agree with this contention. The fact that a different reciprocity board is authorized by Section 5728.15, Revised Code, to extend reciprocity to adjoining states as it relates to highway use tax does not invalidate agreements made by a reciprocity board authorized under G.. C. Section 6306-1 (R. C. 4503.37). If it was the intention and desire to invalidate and nullify the reciprocity agreement entered into on October 26, 1937, between Michigan and Ohio, this should have been accomplished by the terms and conditions of that agreement. I find no evidence to the effect that the agreement of October 26, 1937, was ever invalidated, nullified, cancelled or terminated *132 and therefore, in my opinion, it is and was in full force and effect.
“This raises the question then as to whether or not the reciprocity agreement of October 26, 1937, embraces the tax imposed by Section 5728.06, R. C. To answer this question, the agreement itself must be consulted. * * *
“In my opinion, the language ‘severally waive and forego, and do hereby so waive and forego payment by their respective outstate motor carriers of the license plate taxes, including weight taxes for motor vehicles, and also mileage fees for their operations ’ is adequate and sufficient to include the tax imposed by the highway use tax. * * *
“This being true, it follows that the Tax Commissioner was without authority to collect the taxes imposed on the Interstate Motor Freight System of Michigan of which complaint is made. ’ ’
It is apparent from the foregoing that neither the Tax Commissioner nor the majority of the Board of Tax Appeals passed upon the validity or applicability of the reciprocity agreement of October 26, 1937, as affecting the power of the Tax Commissioner to assess and collect the taxes in question. The Tax Commissioner took the position that he had no authority to make any refund and the Board of Tax Appeals affirmed on the theory that since the controversy involved constitutional questions it had no jurisdiction to decide the question on the merits.
The Attorney General representing the appellee, Tax Commissioner, asserts with reference to the reciprocity agreement of 1937 that the Ohio highway use tax was not in existence in 1937, that, therefore, there could be no valid agreed exemption as to it, and that only license-plate taxes are involved in that agreement. He also maintains that reciprocity agreements can apply only to existing reciprocity legislation.
It is significant, however, that in the 1937 agreement Ohio specifically waives mileage fees for operation of motor vehicles, even though at the date of the agreement no such mileage fee or tax had been levied by the state of Ohio. A very possible reason for such conceded exemption of a possible future tax *133 could be the fact that the state of Michigan already had in effect a mileage tax from which Ohio carriers are by the agreement exempted.
The Attorney General maintains that the agreement of 1937 could not survive subsequent legislation which changed the situation and made it inapplicable. But it is to be noted that the new Ohio Highway Use Tax Act (Sections 5728.01 to 5728. 15, inclusive, Revised Code) not only does not amend or repeal Sections 6306 and 6306-1, General Code, now Sections 4503.36 and 4503.37, Revised Code, but in Section 5728.15 provides that designated Ohio state officers “are hereby authorized and empowered to enter into such reciprocal contracts and agreements with the proper authorities of any state * * * which levies a highway use tax in addition to motor vehicle registration fees exempting from the provisions * * * of this act the owner of every motor vehicle which is duly registered in any such state * * * provided such owner has complied with the laws of the state * * * of his residence pertaining to the registration and taxation of motor vehicles and complies with such laws while operating and driving such motor vehicle upon the public roads or highways of this state, and provided further, that the owners and operators of motor vehicles registered in this state shall be exempt from all obligations pertaining to the registration and taxation of motor vehicles in such other state.”
It will be seen that the new act is not in conflict with the provisions of the reciprocity agreement of 1937 or with Sections 6306 and 6306-1, General Code, which authorized it, but, in fact, the new act carries the same or greater power to make such reciprocity agreements.
In case No. 34407, the Tax Commissioner argues that under Section 6306-1, General Code, the reciprocity board created by the provisions of such section in 1935 was authorized by the General Assembly to enter into reciprocity agreements pertaining only to license taxes referred to in Sections 6290 to 6310-37, General Code, under the title of “Motor Vehicles,” and that the waiver authorized by Section 6306-1, General Code, related to them only as referred to in Section 6306, General Code. However, Section 6306-1, General Code, was originally enacted in 1925 (111 Ohio Laws, 233) as an independent section and was *134 in no way associated with Section 6306, General Code. Four years later, in 1929, Section 6306 was amended (113 Ohio Laws, 475) so as to give agreement jurisdiction to the reciprocity board already established under Section 6306-1, General Code. As a result the reciprocity board had no function to perform with respect to motor vehicle registration fees until four years after the creation of the board by Section 6306-1, General Code.
The reciprocity agreement of 1937 clearly includes a waiver and exemption of “weight taxes for motor vehicles, and also mileage fees for their operations” in favor of Michigan’s commercial motor vehicles operating in Ohio. It is also clear that the Ohio highway use tax is a mileage tax. The rate of tax is fixed by the character and capacity of the commercial carrier vehicles, taking into consideration the number of axles used as a determining factor, but the tax is computed according to the operation mileage.
To date, Ohio has not seen fit to secure a cancellation of its 1937 reciprocal agreement by mere notice of such cancellation. The fact is that Ohio is operating under that agreement so far as Michigan license taxes and Michigan mileage taxes are concerned. So long as it keeps that agreement in force it is not in position to impose the tax on commercial motor carriers operating out of Michigan in interstate commerce.
Having determined that the 1937 reciprocity agreement between the states of Ohio and Michigan is in force and effect, it will not be necessary to pass upon the constitutional questions raised by the appellants. It is a well established rule of law that where a case can be determined upon any other theory than that of the constitutionality of a challenged statute, no consideration will be given to the constitutional question. State, ex rel. Lieux, v. Village of Westlake, 154 Ohio St., 412, 96 N. E. (2d), 414; Village of Strongsville v. McPhee, 142 Ohio St., 534, 53 N. E. (2d), 522; State, ex rel. Herbert, v. Ferguson, Aud., 142 Ohio St., 496, 52 N. E. (2d), 980; Wiggins v. Babbitt, 130 Ohio St., 240, 198 N. E., 873; Rucker v. State, 119 Ohio St., 189, 162 N. E., 802; American Cancer Society, Inc., v. City of Dayton, 160 Ohio St., 114, 114 N. E. (2d), 219.
Finally, the Tax Commissioner claims that he has no power or authority to refund taxes paid by the appellants; that the *135 only authority for the refund of highway use taxes is ^contained in Section 5728.06, Revised Code, which provides that in the event the owner of a commercial car or commercial tractor, “at the end of any calendar year, has paid a tax for axles not actually used in operation over a given number of miles he may file with the Tax Commissioner an application for a refund of the excess taxes paid”; and that the statute just referred to permits recovery of taxes paid only on axles not used in operation and does not extend to axle miles traveled in Ohio.
Under Section 5717.03, Revised Code, the Board of Tax Appeals is given jurisdiction and authority to affirm, reverse, vacate or modify the tax assessments, valuations, determinations, findings, computations or orders of the Tax Commissioner complained of, where appeals therefrom are perfected to the board within the period prescribed by statute. It would be utter futility to perfect such an appeal if, after the Board of Tax Appeals reversed the action of the Tax Commissioner as to taxes illegally collected, there was no remedy by which a refund could be required.
Section 5703.05, Revised Code, provides the remedy. It defines the powers, duties and functions of the Tax Commissioner, and the pertinent part of the section provides as follows:
“All other powers, duties, and functions of the Department of Taxation, except those mentioned in Sections 5703.02 and 5703.04 of the Revised Code, are vested in and shall be performed by the Tax Commissioner, which powers, duties, and functions shall include, but shall not be limited to the following:
li * * *
“(B) Exercising the authority provided by law relative to remitting or refunding taxes or assessments * * * illegally or erroneously assessed or collected, or for any other reason overpaid, except as provided in division (I) of Section 5703.02 of the Revised Code, and in addition, the commissioner has the authority on written application.of any person, firm, or corporation claiming to have overpaid to the Treasurer of State at any time within five years prior to the making of such application any tax payable under any law which the Department of Taxation is required to- administer, or on his own motion investigate the facts and make in triplicate a written statement of his *136 findings, and * * issue in triplicate a certificate of abatement payable to the taxpayer, his assigns, or legal representative which shows the amount of the overpayment and the kind of tax overpaid. ’ ’
The decisions of the Board of Tax Appeals are reversed, and the Tax Commissioner is ordered, in accordance herewith, to make refunds of taxes erroneously paid.

Decisions reversed.

Weygandt, C. J., Matthias and Stewart, JJ., concur.
Zimmerman, Bell and Taft, JJ., dissent.