THE STATE OF OHIO, APPELLEE, *v.* GRIFFIN, APPELLANT.[*]

(No. 25695—Decided March 22, 1962.)

*Motion for leave to appeal overruled (37669), October 17, 1962.

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Don DeRocco*, for appellee.

*Mr. Norman S. Minor* and *Mr. Louis P. Fernberg, Jr.*, for appellant.

HURD, J. On Friday, September 16, 1960, the defendant, Robert Griffin, shot and killed Mattie Lee Benjamin and Mary Lee Williams. He was indicted by the grand jury on two counts of murder in the first degree. On the first count, under Section 2901.01, Revised Code, it was charged that the defendant unlawfully, purposely and with deliberate and premeditated malice, killed Mattie Lee Benjamin. The second count, under the same section, charged that the defendant unlawfully, purposely and with deliberate and premeditated malice, killed Mary Lee Williams. Upon arraignment, the defendant pleaded not guilty by reason of insanity.

The assignments of error are as follows:

"1. The verdict of the jury is contrary to and manifestly against the weight of the evidence and not supported by sufficient evidence.

"2. That the verdict of the jury is contrary to law.

"3. Other errors apparent of record."

According to a written statement the defendant gave to the police on September 17th, he overheard Willie Benjamin, his wife, Mattie, one James Scott and Mary Lee Williams talking about him while he listened at a window above Benjamin's suite where these persons were drinking and talking. He heard James Scott say that he was going to shoot him, and he heard Mary Lee Williams say "If he (Griffin) stands up under these six shots I am going to put into him, he will be lucky." He said he stood there and listened to this conversation long enough and then went back to the corner of East 77th and Euclid, where he tried to think about the conversation he had overheard at Willie Benjamin's house. He stated that his car, a 1950 Cadillac which he had borrowed from his brother-in-law, was parked on East 77th Street not far from Euclid Avenue. In this car was a shotgun which, according to a second written statement made to the police September 17, 1960, he had borrowed from his uncle on Yale Avenue, telling his uncle that he was going squirrel hunting. The shotgun is described as being a double barrel, Wor-

thington Model, 12-guage shotgun. According to his own statement, he deliberated for at least a half hour before he decided, as he stated, to "get them before they got me."

Upon trial, the defendant's plea of insanity was based on intoxication, his claim being that he was so intoxicated that he could not form an intent or purpose to kill with premeditated malice.

This presented a question for the determination of the jury, the burden being upon the defendant to prove his defense of intoxication by a preponderance of the evidence. In *Rucker* v. *State*, 119 Ohio St., 189, paragraphs two and three of the syllabus provide:

"2. Acute alcoholism or mental incapacity produced by voluntary intoxication existing temporarily at the time of the homicide is generally no excuse or justification for the crime. Proof of such intoxication, however, is competent and proper for the jury to consider as bearing upon the question of intent and premeditation, in determining whether the accused is guilty of murder in the first degree or some lesser degree of homicide, or to show that no crime was committed. * * *

"3. Drunkenness is not insanity, nor does it answer to what is termed an unsound mind, unless the derangement which it causes becomes fixed and continued by the drunkenness being habitual, or by chronic alcoholism, and thereby rendering the party incapable of distinguishing between right and wrong, the same as insanity produced by any other cause."

The evidence shows that the defendant had been drinking that afternoon after he got off from work. It is clear from the verdict of the jury that he failed to prove his defense of intoxication to the point of insanity because the jury found him guilty of second degree murder on the first count of the indictment in the murder of Mattie Lee Benjamin and guilty of murder in the first degree on the second count of the indictment in the murder of Mary Lee Williams, without a recommendation of mercy.

Upon a review of the evidence, we find that the jury could very well have returned the verdict as it did because the evidence showed that he was not too intoxicated to drive his Cadillac around to the Benjamin home where he knocked on the back door. When Willie Benjamin opened the door, he saw the defendant poised with the shotgun in his hand, Benjamin immedi-

ately closed the door, whereupon Griffin fired two shots through the door, wounding Benjamin. Griffin then left his car parked in the rear of the apartment and walked up the steps and came out in front of the apartment where he saw Benjamin's wife, Mattie Lee Benjamin. He shot her. The coroner's testimony shows that she died from an "entrance type gunshot wound of the back of the head," in fact, the center or occipital area of the head just above the neck. The coroner testified that the "pulpified brain could be identified in the gaping wound. * * * that there was a * * * wound involving the top of the left ear." The coroner testified further that Mattie Lee Benjamin came to her death as a result of "comminuted fractures of the skull and lacerations and pulpifaction of the brain."

He also shot one Ann Morgan at the same time, who was standing with Mattie Lee Benjamin, although her wound was not fatal but serious. After this, he left the front of the building, went to the back and got into his car and drove over to 1833 East 79th, Apt. 1, where Mary Lee Williams lived. He had a key to the door and opened it. He saw Mary Lee Williams with a telephone receiver in one hand and a pistol in the other hand. He states further that she fired a shot in his direction, but he stepped around the corner and shot her. He then walked into the room where she was and took the pistol out of her hand. He states that he fired two shots at her.

The testimony of the coroner with respect to Mary Lee Williams shows that there were "two entrance type gunshot wounds of the chest, one involved the left upper anterior chest * * * the other involved the right breast. There was another wound of the right forearm consistent with a shotgun wound." The coroner testified that Mary Lee Williams died "as a result of two shotgun wounds of the chest with lacerations of the heart, the lungs, the aorta, the pulmonary artery and the liver." It was on this count of the indictment that the jury found him guilty of murder in the first degree and failed to recommend mercy.

Upon a review of the record, it is quite probable that the jury may have reached its verdict on the ground that one who was capable of driving a Cadillac automobile from East 77th Street, where the first murder occurred, to East 79th Street t

the apartment of Mary Lee Williams, where the second murder occurred, was not so intoxicated that he could not form an intention to kill. The members of the jury could have considered that one whose aim was so true and certain as to strike a vital spot in both victims, first by shooting Mattie Lee Benjamin in the back of the head, and second by shooting and killing Mary Lee Williams in the chest region, was not so intoxicated that he did not know what he was doing or that he was unable to distinguish right from wrong. The jury could have further come to this conclusion by reason of the fact that the defendant was on his way to East 116th Street, where James Scott lived, when he was apprehended by the police. According to his own statement, he drove around for awhile after the murders above described and decided to go out to James Scott's house on East 116th Street, stating, "He was the man that was the cause of all my trouble. He had told me over the phone a couple of weeks ago if I said anything to him about Mary (Williams) he would kill me." When he was apprehended by the police on his way over to East 116th Street, he made the statement in answer to a query of the police that he did not shoot at them because he had nothing against them.

The record shows that he married one Harriet Garland in 1939 and that thereafter he started living with one Katherine Price with whom he had four children without obtaining a divorce. In 1954, he met Mary Lee Williams and then started living with her. That was around 1955. Thereafter he testified he spent "all of my time with Mary." In the meantime, he would take money over to Katherine each week. It appears from the record that he became very jealous of James Scott because he was beginning to interfere with his relations with Mary Lee Williams, his second victim, and that he felt that Willie Benjamin and Mattie Lee Benjamin were interfering in the situation, that they acted as go-between between Scott and Mary Lee Williams.

The review of the record indicates clearly that on the night of September 16th, Griffin started out with murder in his heart, and, although he had been drinking, he was not so drunk that he did not show a purpose and intent to kill two people with a deadly weapon, shooting them in vital parts, and was on his way to

kill a third when apprehended by the police. The evidence shows that he was on target in both of the killings. This is not the act of a drunken man. At least the jury so found.

The defendant called three expert witnesses who, in answer to lengthy hypothetical questions, stated that the defendant was not a free moral agent at the time he committed the murders. However, Dr. Joynes stated, on direct and cross-examination, that in his opinion the defendant was capable of distinguishing between right and wrong at the time of the fatal shooting. Likewise, Dr. Baldwin stated that, assuming the facts in defendant's counsel's hypothetical question be true, the defendant was capable of distinguishing between right and wrong. Dr. Wilfred M. Gill gave his opinion that, assuming the facts contained in the defendant's statement, made September 17, 1960, to the police, to be true, the defendant could distinguish between right and wrong. See *Daniel M'Naughten's Case* (1843), 10 Cl. & Fin., 200, 8 Eng. Rep., 718, and the opinion of this court in *State* v. *Cumberworth* (1942), 69 Ohio App., 239.

Under the facts and circumstances, as shown by the record, we conclude that the members of the jury could well have found that with deliberate and premeditated malice, Griffin killed Mary Lee Williams. We cannot find that the verdict of the jury was against the manifest weight of the evidence or that it was contrary to law.

There being no errors apparent on the face of the record, we find there was ample evidence to support the verdict of the jury, by reason whereof the judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

Kovachy, P. J., and Skeel, J., concur.