THE STATE OF OHIO, APPELLEE, *v.*
MOSHER, APPELLANT.

(No. 12723—Decided
April 1, 1987.)

*Lynn Slaby,* prosecuting attorney,
for appellee.

*Peter T. Cahoon,* for appellant.

MAHONEY, J. Appellant, David
Allen Mosher, challenges his convic-
tion following a trial to the court in the
Summit County Court of Common
Pleas for involuntary manslaughter in
violation of R.C. 2903.04, with a
firearm specification. We affirm.

### Facts

On January 24, 1986, David Allen
Mosher was charged with the January
12, 1986 aggravated murder of Patri-
cia Moore. Mosher, in response, en-
tered pleas of not guilty and not guilty
by reason of insanity.

A trial to the court commenced on
June 4, 1986 at which time Mosher
moved the court to suppress from the
introduction into evidence at trial
statements concerning the where-
abouts of a .25 caliber pistol and all
fruits of such statements, including the
.25 caliber pistol. He claimed such
evidence was obtained in violation of
his *Miranda* rights. Following argu-
ments of counsel, the trial court denied
Mosher's motion to suppress.

At trial, Dr. John R. Graham, a
psychologist, testified on behalf of the
defense. Graham testified that he had
evaluated Mosher on February 21,
1986 with respect to the sanity issue.
Graham related that from age fifteen
or sixteen, Mosher, who was twenty-
six at the time of the shooting, had
taken amphetamines and smoked
marijuana on a daily basis. Graham
further related that between the ages
of seventeen and eighteen, Mosher had
taken phencyclidine, also known as
"Crystal-T" and "PCP," fifteen to
twenty-four times. Mosher again, ac-
cording to Graham, ingested phen-
cyclidine four or five times in the
weeks prior to the shooting. Graham
explained that Mosher disliked the ef-
fects of phencyclidine as it made him
feel paranoid, gave him distorted per-
ceptions, and made him feel as though
he were floating and "melting into
things." Graham further testified that,
at the conclusion of his evaluation, he
diagnosed that Mosher suffered from
an atypical psychosis at the time of the
shooting as manifested by his delu-
sions, confusion and illogical thinking.
Graham stated that Mosher's sub-
stance abuse was a primary causative
factor of the psychosis but that he

could not be sure to what extent other causative factors, such as environment and family relationships, may have lead to such disorders. Graham then rendered his expert opinion that, to a reasonable psychological certainty, Mosher, because of his disorder, was unable to refrain from the shooting and could not determine right from wrong.

On rebuttal, Dr. Kathleen Stafford, a psychologist with the Criminal Psycho-Diagnostic Clinic, testified that, upon her evaluation, she diagnosed Mosher as suffering, at the time of the shooting, from a number of disorders, the primary one being an amphetamine delusional disorder. Such disorder, Stafford testified, is characterized by visual hallucinations, anxiety, aggressiveness, hostility, and paranoia, and is caused by long-term low dosage use of amphetamines. A secondary disorder from which Mosher suffered, Stafford testified, is known as "phencyclidine mixed organic mental disorder" which is characterized by visual delusions, aggressiveness, agitation, and paranoia. Stafford concluded that Mosher suffered these disorders as a direct result of his voluntary substance abuse and, consequently, at the time of the shooting, could not refrain from wrongfully acting and could not distinguish right from wrong.

At the conclusion of the trial, following arguments of counsel, the trial court found Mosher guilty of the lesser included offense of involuntary manslaughter in violation of R.C. 2903.04, with a firearm specification.

## Assignment of Error I

"The verdict of the trial court in finding defendant guilty of the offense of involuntary manslaughter (with a firearm specification) was against the manifest weight of the evidence, and must be reversed."

In his first assignment of error,

Mosher contends that his conviction for involuntary manslaughter with a firearm specification must be reversed as being against the manifest weight of the evidence. Specifically, Mosher contends that the trial court, as the trier of fact, erred in failing to find him not guilty by reason of insanity.

The Ohio Supreme Court, in *State v. Staten* (1969), 18 Ohio St. 2d 13, 47 O.O. 2d 82, 247 N.E. 2d 293, paragraph two of the syllabus, enunciated the test for demonstrating legal insanity in a criminal case:

"In order to establish the defense of insanity where raised by plea in a criminal proceeding, the accused must establish by a preponderance of the evidence that disease or other defect of his mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act."

It is also well-recognized in Ohio, however, that:

"* * * [T]he defense of insanity cannot be successfully established simply on the basis that the condition resulted from the use of intoxicants or drugs, where such use is not shown to be habitual or chronic. * * *" *State v. Toth* (1977), 52 Ohio St. 2d 206, 210, 6 O.O. 3d 461, 464, 371 N.E. 2d 831, 834 (modified on other grounds in *State v. Muscatello* [1978], 55 Ohio St. 2d 201, 9 O.O. 3d 148, 378 N.E. 2d 738), citing *Rucker v. State* (1928), 119 Ohio St. 189, 162 N.E. 802, paragraph three of the syllabus.

On the basis of the record before this court, we cannot find that the trial court erred in failing to find Mosher not guilty by reason of insanity. Stafford and Graham each testified at trial that Mosher suffered mental disorders at the time of the shooting and that such disorders prevented him from knowing that his acts were wrong and

impaired his ability to refrain from committing such acts. Stafford, however, diagnosed Mosher's disorders as stemming partially from his long-term, chronic abuse of amphetamines and partially from his recent and short-term abuse of phencyclidine. Graham additionally could not state with certainty to what extent Mosher's disorders could be attributed to his chronic drug abuse or to other factors such as environment or family relationships. Thus, the record amply supports the trial court's conclusion that Mosher did not establish by a preponderance of the evidence that his mental disorders were the result of chronic or habitual drug abuse within the meaning of *Toth* and *Rucker*. The trial court's finding therefore will not be disturbed on appeal. See *State* v. *Thomas* (1982), 70 Ohio St. 2d 79, 24 O.O. 3d 150, 434 N.E. 2d 1356.

### Assignment of Error II

"The trial court committed prejudicial error by denying defendant's motion to suppress."

In his second assignment of error, Mosher contends that the trial court erred in overruling his motion to suppress the introduction of a .25 caliber pistol into evidence as such evidence was obtained in violation of his *Miranda* rights. Specifically, Mosher contends that police interrogation precipitated his mother's asking him the whereabouts of the gun and his telling her to get the gun for the police.

At the June 4, 1986 suppression hearing, Sergeant William Blaydes of the Akron Police Department testified that he and Detective Darrah, also of the Akron Police Department, went to the home of Mosher's mother, Patricia Carlyse, in Dennison, Ohio. Blaydes testified that, upon their arrival, Carlyse informed them that Mosher was inside, that he had a gun, and that he was "strung out" on drugs. When they entered the house, Blaydes testified that Carlyse twice asked Mosher, as he emerged from the basement, whether he had a gun. Carlyse, according to Blaydes' testimony, also said, "Don't do it," "Don't bring that gun up here," and "Do you have the gun behind your back?"

Blaydes then stated that when Mosher emerged from the basement, he embraced his mother who patted his back and pockets. Blaydes then testified that he placed Mosher against the kitchen wall and asked him whether he had a gun. When Mosher responded, "No," Blaydes testified that he asked no further questions. At this point, however, Blaydes stated that Carlyse again asked Mosher whether he had the gun, to which Mosher responded, "You know where the gun is. Go get it for them." Blaydes then related that Carlyse, followed by Blaydes and Darrah, went to the basement and pulled the .25 caliber pistol from behind a speaker.

We note initially that Carlyse's final question to Mosher which prompted him to tell his mother to find the gun for the police was not part of the police interrogation. Carlyse was not acting as an agent for the police but was acting rather out of concern for her son. Mosher's statement and the fruits of such statement consequently did not fall within the ambit of the *Miranda* rule.

Assuming *arguendo*, however, that such statement and the fruits thereof fall within the realm of *Miranda*, we find the evidence is nevertheless admissible under the authority of *Nix* v. *Williams* (1984), 467 U.S. 431. In *Nix*, the United States Supreme Court held that evidence obtained in violation of a constitutional right may be properly admitted at trial if it can be shown that such evidence would have ultimately or inevitably been discovered if no constitutional violation had taken place.

In the present case, the record amply demonstrates that the police would have ultimately or inevitably discovered the .25 caliber pistol. Obviously, the record indicates that the police were investigating a homicide wherein the victim had been shot twice with a firearm. The record furthermore indicates that Carlyse told police, immediately upon their arrival at the Carlyse home, that Mosher was inside and that he had a gun. On the basis of this information, had Mosher not told his mother to get the gun, the police would have obtained a search warrant, searched the basement of the Carlyse home where Mosher had spent the night, and found the pistol. The pistol, therefore, was properly admitted into evidence by the trial court.

We find, additionally, that if Mosher's statement to his mother falls within the realm of the *Miranda* rule, the admission of such statement as well as the pistol as the fruit of such statement constitutes harmless error. "Error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold the error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. * * *" *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 106, 2 O.O. 3d 249, 267, 357 N.E. 2d 1035, 1056, vacated as to the death penalty (1978), 438 U.S. 911.

In the present case, the evidence is overwhelming in its accusation of Mosher. At trial, Susan Moore, the victim's daughter-in-law, testified that she had seen Mosher with a gun on the evening before the shooting. She related further that on the evening of the incident, Mosher was acting so strangely that she and her husband offered to let Mosher rest in their home while they went out for the evening. Susan further testified that upon returning home on the evening of the shooting, she and her husband found the front door wide open and the porch light on. She stated further that they found her mother-in-law on the floor of the living room, that Mosher's coat and boots were still in the living room, but that Mosher was gone. Graham and Stafford additionally testified that Mosher had told them that he had fallen asleep in an upstairs bedroom in the Moores' home and that he had taken a gun to bed with him as he felt terribly afraid. They further testified that Mosher awakened when he heard the front door open, that he heard a woman call out "Susan" and that he fired several shots from the top of the stairs. They further related that Mosher believed he was shooting the devil instead of a human being as he believed the Moores were involved in devil worship. The Summit County Coroner additionally testified that the fatal gunshot in this case passed in a downward motion through the victim's chest. From the record in this case, we find no reasonable possibility that Mosher's statement concerning the pistol, as well as the pistol itself, even if they were erroneously admitted, contributed to Mosher's conviction. Thus, if the trial court committed error in admitting such evidence, the admission was harmless beyond any reasonable doubt.

### Summary

Mosher's assignments of error are overruled and his conviction is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and GEORGE, J., concur.