JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Nicholas Myles ("appellant") appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} On October 1, 2003, appellant pled not guilty to speeding and DUI violations and signed a time waiver. Appellant's attorney filed a motion to suppress, arguing that there was no probable cause and that appellant was not afforded the opportunity to consult with his attorney. A jury trial demand was also filed.
 {¶ 3} Appellant filed a request for occupational driving privileges on October 23, 2003, which was granted on October 27, 2003. A hearing on the motion to suppress was held on January 14, 2004. Closing briefs were filed by the parties on February 20, 2004. On February 23, 2004, the trial judge issued a journal entry granting the motion to suppress in part, as to the testimony on the portable breath alcohol test, and denying the rest.
 {¶ 4} On April 7, 2004, appellant changed his plea to no contest. This was appellant's first DUI offense, and the trial judge sentenced him to pay a $550 fine and costs and to serve 30 days in jail, with 27 days suspended. Appellant was also convicted of the speeding charge and given a fine of $50. His motion to stay execution of sentence pending appeal was granted.
 {¶ 5} On May 6, 2004, appellant filed his first notice of appeal to this court, Case No. 84638. After oral argument was held on January 25, 2005, this court issued its journal entry and opinion vacating and remanding the matter back to the trial court, finding that appellant's no contest plea was invalid. On March 9, 2005, appellant changed his plea to no contest. The trial court again found appellant guilty of DUI and speeding and gave him the same sentence as on April 7, 2004. However, the judge found that no further license suspension was warranted, as the one year BMV refusal suspension had already been satisfied, and appellant's license had been reinstated. On March 23, 2005, appellant again filed a notice of appeal to this court.
 {¶ 6} According to the facts, on September 27, 2003, at approximately 1:30 a.m., a uniformed police officer, Steven Molle, was driving northbound on Trebisky Road in Richmond Heights, Ohio in his marked police cruiser. The streets were wet and there was a light drizzle. Officer Molle observed a tan Honda pass him at a high rate of speed, and he followed the vehicle eastbound. It took him a while to catch up to the vehicle. Officer Molle observed his speedometer at 54 m.p.h. in the 35 m.p.h. zone, 19 miles over the speed limit, for approximately two-tenths of a mile. Officer Molle maintained a set distance of 100 feet, pacing appellant's vehicle at 50 m.p.h. in a 35 m.p.h. zone, 15 miles over the speed limit. Officer Molle then turned on his overhead lights and initiated a traffic stop. After Officer Molle stopped appellant's vehicle and appellant lowered his window, Officer Molle detected a strong odor of alcohol coming from within the vehicle. The officer also observed appellant's slurred speech and his red and glassy eyes.
 {¶ 7} Officer Molle then waited for backup before asking appellant to step out of his vehicle. Appellant told the police that he was not drinking and was the designated driver for his two female passengers who had been drinking. Appellant agreed to perform field sobriety tests. Officer Molle noticed that appellant had trouble maintaining his balance during these tests. The first NHTSA field sobriety test was the horizontal gaze nystagmus test to detect nystagmus, jerkiness of the eyes, which is exaggerated or intensified under the effects of alcohol.
 {¶ 8} The second NHTSA field sobriety test was the walk-and-turn test. Officer Molle noted five of the clues he was trained to look for: cannot keep balance while listening to instructions, starts before instructions are finished, loses balance while walking (steps off the line), uses arms for balance, and loses balance while turning.
 {¶ 9} The third NHTSA field sobriety test was the one leg stand test. Officer Molle noted four of the clues he was trained to look for: sways while balancing, uses arms to balance, hopping, and puts foot down. A fourth test was then given, a reverse counting test. Officer Molle instructed appellant to start with number 74, count backwards to 49 and stop at 49. Appellant correctly counted backwards but did not stop at 49 as instructed. He counted down to 41, when the officer had to advise him to stop.
 {¶ 10} These tests were videotaped through a camera on Officer Molle's cruiser. However, the sound malfunctioned; consequently, only the video can been seen. Officer Molle indicated that the video demonstrates enough to adequately support his test observations.
 {¶ 11} While the officer was dealing with the final test, one of the passengers yelled out of the car window that appellant's attorney was on a cell phone. Officer Molle advised appellant that he was conducting a field sobriety test and would not allow him to use the phone at that time.
 {¶ 12} A portable breath alcohol test (PBT) test was then conducted out of sight of the camera. The trial judge suppressed testimony of the test and its results for probable cause. As a result of appellant's performance on the field sobriety tests and his red glassy eyes, slurred speech and alcoholic breath odor, appellant was arrested for driving under the influence.
 {¶ 13} Officer Molle testified that appellant did not make any statements in response to custodial interrogation at the police station, where he was advised of his constitutional Miranda rights a second time. Appellant was permitted to speak to his attorney by telephone three times at the police station. He did not answer the questions on the alcohol influence report form at the station. Appellant refused the BAC Datamaster test after being read the BMV 2255 form on implied consent. Appellant now appeals the trial court's decision.
 II. {¶ 14} Appellant's first assignment of error states the following: "The trial court erred in denying the defendant-appellant's motion to suppress and in finding the defendant-appellant guilty of driving under the influence, as there was no reasonable suspicion to stop the defendant-appellant."
 {¶ 15} Appellant's second assignment of error states the following: "The trial court erred in denying defendant-appellant's motion to suppress and in finding the defendant-appellant guilty of driving under the influence, as there was no probable cause to arrest the defendant-appellant; as the officers acknowledged that the defendant-appellant was not under arrest after all field sobriety tests."
 {¶ 16} Appellant's third assignment of error states the following: "The trial court erred in denying defendant-appellant's motion to suppress and in finding the defendant-appellant guilty of driving under the influence, there was no probable cause to arrest the defendant-appellant, as the videotape of the defendant-appellant evidences that the defendant-appellant showed no signs of impairment."
 {¶ 17} Appellant's fourth assignment of error states the following: "The trial court erred in denying defendant-appellant's motion to suppress and in finding the defendant-appellant guilty of driving under the influence, as the defendant-appellant was denied his right to speak with his attorney, who was on the telephone as the defendant-appellant was being interrogated and not free to leave the scene at any time."
 {¶ 18} Appellant's fifth assignment of error states the following: "The defendant-appellant was prejudiced, as the trial court punished him for exercising his rights of appeal, when the trial court scratched out her sentence and, indeed, imposed a harsher sentence when defendant-appellant advised the trial court he would be exercising his rights of appeal."
 III. {¶ 19} Because of the substantial interrelation between appellant's first four assignments of error, we shall address them together.
 {¶ 20} Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996),116 Ohio App.3d 286, citing Tallmadge v. McCoy (1994),96 Ohio App.3d 604. In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Hopfer (1996),112 Ohio App.3d 521. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. Terry v. Ohio (1968), 392 U.S. 1 at 21.
 {¶ 21} In Terry, the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. "In justifying a Terry-type intrusion, however, the police officer may not rely upon a mere hunch or an unparticularized suspicion."State v. Ford (1989), 64 Ohio App.3d 105, quoting State v.Price (June 10, 1987), Montgomery App. No. 9760. "The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."
 {¶ 22} In City of Cleveland v. Sanders, Cuyahoga App. No. 83073, 2004-Ohio-4473, this court found the defendant's speed of 48 m.p.h. in a 25 m.p.h. zone measured by an experienced officer to provide a reasonable suspicion that the defendant was operating his motor vehicle in violation of the law. This court stated the following in City of Cleveland v. Sanders:
"In order for a stop to be proper, the officer must have a reasonable and articulable suspicion, that the driver is either engaged in criminal activity or operating his motor vehicle in violation of the law. (Citations omitted.) The reasonableness of the stop is viewed in light of the totality of the circumstances."
(Citations omitted.)
 {¶ 23} In the case sub judice, appellant argues that there was no reasonable suspicion to stop him and no probable cause to arrest him. However, appellant was speeding, and therefore, operating his vehicle in violation of the law. Officer Molle, a trained police officer with over eight years of experience, paced appellant's vehicle at 50 m.p.h. in a 35 m.p.h. zone, in violation of Section 333.03 of the Richmond Heights Codified Ordinances.
 {¶ 24} In addition, the trial court found that the service records for cruiser 6327, defendant's exhibit B, demonstrate that the cruiser's speedometer was factory certified less than six months before this stop. Officer Molle testified as to his observations regarding appellant's speed. He further testified that he found no problem with the speedometer in his cruiser when he checked his hand-held radar unit against it. We find the trial court's findings to be supported by competent, credible evidence. Moreover, we find that the trial court did not err in denying appellant's motion to suppress, as there was a reasonable suspicion to stop appellant's vehicle.
 {¶ 25} Appellant's first assignment of error is overruled.
 {¶ 26} In reviewing drunk driving cases, the courts have traditionally evaluated the totality of the facts and circumstances. State v. Medcalf (1996), 111 Ohio App.3d 142,147. "An arrest for driving under the influence need only be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol." Id. Citations omitted. In determining whether adequate indicia existed at the time of the arrest, the courts examine a number of factors:
"* * * These factors include, but are not limited to: (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer (`very strong,' `strong,' `moderate,' `slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative."
State v. Evans (1998), 127 Ohio App.3d 56, 63, fn.2.
 {¶ 27} The case at bar involves several of the factors above. For example: (1) the appellant was stopped at 1:27 a.m. late Friday night; (2) appellant stated that he was the designated driver for his two female passengers who had been drinking, and therefore could logically have been coming from a bar; (3) appellant was speeding, thereby demonstrating an indicia of erratic driving; (4) Officer Molle witnessed the speeding violation himself; (5) the condition of appellant's eyes were bloodshot and glassy; (6) appellant's speech was slurred; (7) there was an odor of alcohol coming from the interior of the car and from appellant's breath; (8) the intensity of that odor was strong; and (9) appellant had trouble maintaining his balance during the field sobriety tests.
 {¶ 28} Appellant's actions regarding the nine factors above, together with the officer's previous experience in dealing with drunk drivers and additional evidence in the record, demonstrate probable cause for arresting appellant.
 {¶ 29} We do not find appellant's argument regarding the videotape to have merit. The videotape quality was poor and the audio was not working. Additional evidence regarding the videotaped sobriety testing was presented to the trial court. Officer Molle testified as to his personal observation of how appellant performed on the sobriety tests. Officer Molle was free to testify as to his personal observation of how appellant performed on the sobriety tests. The trial court evaluated the evidence and came to the conclusion that even though the quality of the videotape was poor, the tape still demonstrated that the tests were done in substantial compliance with NHTSA standards. After reviewing the evidence in the record, we find no error on the part of the lower court regarding its handling of the videotape.
 {¶ 30} Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 31} Appellant argues in his fourth assignment of error that the trial court erred when it denied his motion to suppress because he was denied right to counsel. We do not find merit in appellant's argument.
 {¶ 32} The United States Supreme Court has held that theSixth Amendment Right to counsel applies only to "critical stages" of a criminal prosecution that might jeopardize a defendant's right to a fair trial. United States v. Wade
(1967), 388 U.S. 218, 224.
 {¶ 33} The Ohio Supreme Court found that:
"[T]he right to counsel associated with the protection against self-incrimination contained in the Fifth Amendment to the United States Constitution, or as guaranteed by the Sixth Amendment, does not apply to the stage at which the officer requested the chemical test for alcohol content. * * * A breath- or blood-alcohol test is merely a preparatory stage of the prosecution and is not considered a critical stage at which theSixth Amendment right to counsel would attach."
Dobbins v. Ohio Bur. of Motor Vehicles (1996),75 Ohio St.3d 533, citing McNulty v. Curry (1975), 42 Ohio St.2d 341. Ohio courts have also held that a suspect's right to counsel arises as to custodial interrogation but not to tests to determine alcohol level or sobriety. McNulty, supra.
 {¶ 34} Appellant was not under arrest at the time he was field tested. He was only being detained for DUI investigation during the field sobriety testing and was not free to leave until the investigation as to probable cause for a formal DUI arrest was completed.
 {¶ 35} Appellant was read his Miranda rights as soon as he was arrested and was again given them before being asked to answer questions on the alcohol influence report form, which he refused to answer. Officer Molle testified that appellant made no statements in the cruiser or at the station in response to questioning and only stated that he had not been drinking and was the designated driver on the scene. Appellant was provided with his statutory right to reasonable facilities to contact and communicate with an attorney. Appellant communicated with his attorney three times by telephone at the police station, as shown on the second videotape at the station.
 {¶ 36} Moreover, Officer Molle provided testimony as to his legitimate safety concerns during his roadside field testing. Officer Molle explained during direct examination why he did not allow appellant to talk on the cell phone:
"He was — at that point in time he was not under arrest.
I was not interrogating him. I did not know if she actually had a telephone to hand to him. And as far as officer safety, I did not want him going to the car, grabbing something out of the car that would jeopardize my safety or the safety of the other officer."[1]
 {¶ 37} Officer Molle further explained his reasoning during cross-examination:
"I had no idea what was in the car. Me approaching the car could be a safety issue. Yes, I was told that an individual was on the phone, that individual being an attorney, waiting to speak to the Defendant. I did not see a phone, I did not know if there was a phone in there, or if I was to walk up to the car to a gun. I did not know. I chose to be cautious and not jeopardize my safety."[2]
 {¶ 38} We find that the evidence demonstrates that the trial court did not err when it denied appellant's motion to suppress. Given the circumstances, appellant had no right to speak with his attorney by cell phone during the roadside field sobriety testing.
 {¶ 39} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 40} Appellant argues in his fifth assignment of error that he was given a harsher sentence when the judge became aware that he was appealing his case.
 {¶ 41} Appellant did not object to his sentence previously at the lower court level and is bringing this matter up for the first time. Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed. Nor do appellate courts have to consider an error which the complaining party could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State ex rel.Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78.
 {¶ 42} Assuming arguendo that appellant had objected in a timely manner, his argument would still lack merit. Appellant is unhappy with his sentence; however, the trial judge actually favored appellant in part of her sentencing. The trial judge ordered that the suspension coincide with the year suspension on appellant's previous refusal for which the judge issued limited driving rights. Thus, appellant was not forced to go to another court to ask for driving rights which he may not have received.
 {¶ 43} Accordingly, appellant's fifth assignment is overruled. Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Patricia Ann Blackmon, J., and Michael J. Corrigan, J.,concur.
[1] Tr. 44.
[2] Tr. 54-55.