OPINION
{¶ 1} Defendant-appellant, Nathan Penix, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, denying his motion to suppress evidence relating to his later OVI conviction in violation of R.C. 4511.19. For the reasons set forth in this opinion, we affirm the judgment of the trial court below.
 {¶ 2} On January 25, 2007, at approximately 1:51 a.m., Sergeant Donald R. Dunbar of the State Highway Patrol was heading south on State Route 44 when he *Page 2 
observed a Dodge pickup truck heading north. Sgt. Dunbar visually identified the truck traveling "well in excess of" the posted forty miles-per-hour speed limit. Sgt. Dunbar's radar unit confirmed his initial visual identification, registering Penix's speed at fifty-seven miles-per-hour, significantly over the prima facie limit. Sgt. Dunbar performed a U-turn, proceeded to approach Penix's vehicle and initiated a traffic stop for the speeding violation.
 {¶ 3} After approaching the vehicle and contacting Penix, Sgt. Dunbar detected an odor of alcohol emanating from the truck. Penix admitted he had been at the Dusty Armadillo bar where he had consumed a couple of beers. Sgt. Dunbar then asked Penix to accompany him to his police cruiser, and Penix complied. Once inside the cruiser Sgt. Dunbar observed that an odor of alcohol was still emanating from Penix's person, and further observed that Penix's eyes were bloodshot. Sgt. Dunbar proceeded to administer the Horizontal Gaze Nystagmus (HGN) test, which Penix failed. After Penix failed the HGN test, Sgt. Dunbar had him exit the cruiser and perform two other field sobriety tests, the One-Leg Stand and the Walk-and-Turn, both of which Penix passed. Sgt. Dunbar then placed Penix under arrest. At the patrol station, Penix submitted to a BAC test, which indicated a blood alcohol concentration of .128, well over the legal limit.
 {¶ 4} Penix was charged with operating his vehicle under the influence of alcohol, in violation of R.C. 4511.19, and speeding, in violation of R.C. 4511.21. He was arraigned January 26, 2007, and waived his right to a speedy trial. On May 8, 2007, after discovery proceedings, Penix filed a motion to suppress evidence, arguing *Page 3 
Sgt. Dunbar lacked reasonable suspicion to stop his vehicle and detain him, and lacked probable cause to arrest him for operating his vehicle under the influence of alcohol. After a hearing the trial court denied Penix's motion. Subsequently, on September 19, 2007, Penix entered a plea of no contest to the OVI charge and was sentenced by the trial court to one hundred eighty days in jail, fined $1,000 plus court costs, and had his driver's license suspended for six months. One hundred seventy-seven days of the sentence, and $450 of the fine were suspended on various conditions.
 {¶ 5} On October 9, 2007, Penix filed this appeal, assigning three errors; each pertaining to the trial court's denial of his motion to suppress.
 {¶ 6} A motion to suppress presents a mixed question of law and fact. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366; see, also, State v. Smith (1991), 61 Ohio St.3d 284, 288.
 {¶ 7} On review, an appellate court must accept the trial court's findings of fact if they are supported by some competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been met. Id.; see, also, State v. Swank, 11th Dist. No. 2001-L-054, 2002-Ohio-1337, at ¶ 11.
 {¶ 8} Penix's first assignment of error reads: "Whether the trial court erred in finding the arresting officer had probable cause based on articulable facts when viewed *Page 4 
in light of the totality of the circumstances to continue to detain Appellant or conduct `field sobriety tests' after the initial stop."
 {¶ 9} By his first assignment of error, Penix asserts Sgt. Dunbar was not justified in requiring him to perform field sobriety tests. We do not agree with this assertion.
 {¶ 10} When a police officer observes a traffic violation, he or she is justified in initiating a limited stop for the purpose of issuing a citation. State v. Brickman (June 8, 2001), 11th Dist. No. 2000-P-0058, 2001 Ohio App. LEXIS 2575, *5. However, a request that a driver perform field sobriety tests constitutes a greater invasion of liberty than the initial stop, and "must be separately justified by specific, articulable facts showing a reasonable basis for the request." State v. Evans
(1998), 127 Ohio App.3d 56, 63, citing State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361. Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances. Evans, supra, at 63; see, also,State v. Reed, 7th Dist. No. 05 BE 31, 2006-Ohio-7075, at ¶ 9. Here, Penix does not contest the propriety of the initial stop. Rather, he contests whether once stopped, the officer improperly detained him in order to conduct field sobriety tests.
 {¶ 11} In Evans, we set forth a non-exclusive list of factors to be considered when determining whether a police officer has a reasonable suspicion of intoxication justifying the administration of field sobriety tests. That list, on which no one factor is dispositive, consists of the following: *Page 5 
 {¶ 12} "(1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (Whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer (`very strong,' `strong,' `moderate,' `slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." Id. at f.n. 2; accord,Reed, supra, at ¶ 10-11; Brickman, supra, at *6-*7.
 {¶ 13} In Brickman, supra, this court upheld the trial court's granting of the defendant's motion to suppress evidence gathered from the initial stop of the defendant for driving under the influence. However, the panel in Brickman still noted that "courts generally approve an officer's decision to conduct field sobriety tests when [the] officer's *Page 6 
decision was based on a number of factors [set forth inEvans]." Id. at *8, quoting Evans, supra.
 {¶ 14} A similar sentiment was expressed by the Second District in contrasting its holding in State v. Dixon (Dec. 1, 2000), 2d Dist. No. 2000-CA-30, 2000 Ohio App. LEXIS 5661 with its holding in State v.Downing, 2d Dist. No. 2001-CA-78, 2002-Ohio-1302. In Dixon, the appellate court determined that the smell of alcohol and glassy eyes at a late hour, without more, is not sufficient to conduct a field sobriety test. Id. at *5. However, in Downing, the court concluded that "the additional element of erratic driving or specifically a `strong' odor of alcohol seem to tip the scales in favor of allowing the tests." Id. at ¶ 10.
 {¶ 15} In the case sub judice we find Penix's speeding to be an indicia of erratic driving. Finding speeding, especially excessive speeding on snowy, wet road conditions, as indicia of erratic driving is in accord with several other districts. For example, the Second Appellate District in State v. Hall, 2d Dist. No. 05 CA 0006,2005-Ohio-6672 has stated that, "although speeding is not necessarily indicative of intoxication, it can be." Id. at ¶ 11.
 {¶ 16} Additionally, the Fifth District in State v. Pappas, 5th Dist. No. 83-CA-20, 1984 Ohio App. LEXIS 10413, explicitly stated that it "rejected] any cloudy characterization of speeding as not being an element of drunken driving." Id. at *3. The court held that "[s]peeding stands equally with lane changing, weaving, and other traffic offenses," as an indicia of impaired driving. Id. *Page 7 
 {¶ 17} Further, the Tenth District in Columbus v. Anderson, (1991),74 Ohio App.3d 768, found that the reasonable suspicion necessary to conduct field sobriety tests was present when suspect was speeding (court found speeding to be an indicia of erratic driving), had a moderate odor of alcohol on his person, and it was the early morning hours when the suspect was stopped.
 {¶ 18} We find most persuasive the reasoning of the Eighth District inCity of Richmond Heights v. Myles, 8th Dist. No. 86171, 2006-Ohio-542. In City of Richmond Heights, the suspect was clocked at fifty-four miles-per-hour in a thirty-five miles-per-hour zone, and during police pursuit was registered as traveling fifty miles-per-hour in the same zone. The speeding took place on wet, rainy road conditions. The appellate court held that such speeding was a clear indicia of erratic driving, and the arresting officer witnessing the speeding violation constituted a cognizable report that the driver may be intoxicated. Id. at ¶ 27.
 {¶ 19} Application of the Evans factors to this case indicates that Sgt. Dunbar's decision to conduct field sobriety tests was justified by specific, articulable facts showing a reasonable basis for the request. Here, six factors set forth in Evans are present: (1) the time and day of the stop (The stop occurred at 1:51 a.m. on a Thursday); (2) the location of the stop (Penix admitted he had been at the Dusty Armadillo bar); (3) an odor of alcohol emanating from suspect's car or person (Sgt. Dunbar noticed an odor of alcohol coming from Penix's vehicle, and Penix was the only occupant); (4) the suspect's admission to alcohol consumption (Penix admitted to having a "couple" of beers); (5) a cognizable report that the driver may be intoxicated (Sgt. Dunbar *Page 8 
witnessed Penix speeding in the early hours of the morning) and; (6) an indicia of erratic driving before the stop (Penix traveling seventeen miles-per-hour over the speed limit on snowy, wet road conditions).
 {¶ 20} These six factors stated above, together with the officer's previous experience and extensive training in dealing with impaired drivers, as referenced to in the record, demonstrates a justifiable reasonable suspicion to detain Penix further after the initial stop to conduct field sobriety tests. Penix's first assignment of error is without merit.
 {¶ 21} Penix's second assignment of error reads:
 {¶ 22} "Whether the trial court erred in finding that the arresting officer in conducting the field sobriety tests complied with the standardized testing procedures prescribed by law."
 {¶ 23} By his second assignment of error, Penix asserts that Sgt. Dunbar did not fully comply with the National Highway Traffic Safety Administration's (NHTSA) standardized procedure when administering the HGN test; hence the results of the test should be suppressed. Specifically, Penix contends that Sgt. Dunbar failed to: (1) instruct him properly; (2) conduct the test properly and; (3) inquire or test as to whether he had any medical conditions that may affect the results of the test. However, other than stating the supposed deviations from standard procedure in his brief, Penix cites no authority for his general proposition that the abstract deviations asserted provide a basis for a reversal. And contrary to his position, the Supreme Court of Ohio in State v. Boczar (2007), 113 Ohio St.3d 148, 2007-Ohio-1251 held that strict compliance is not *Page 9 
required for admissibility at trial. Rather, "[i]n order for the results of the field sobriety tests to be admissible, the state must show by clear and convincing evidence that the officer performing the testingsubstantially complied with accepted testing standards." (Emphasis added.) State v. George, 5th Dist. No. 07-CA-2, 2008-Ohio-2773, at ¶ 28, citing, State v. Jimenez, 12th Dist. No. CA2006-01-005, 2007-Ohio-1658 citing, State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37; see, also, R.C. 4511.19(D)(4)(b).
 {¶ 24} In Boczar, the Supreme Court stated: "The HGN test cannot be compared to other scientific tests, such as a polygraph examination, since no special equipment is required in its administration. * * *The admission of the results of the HGN test is no different from anyother field sobriety test, such as finger-to-nose, walk-and-turn, or one-leg stand." (Emphasis sic.) Id. at 153, quoting State v.Bresson, (1990) 51 Ohio St.3d 123, 129. "Therefore," the Court continued, "we hold that HGN tests are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." Id.
 {¶ 25} In the case sub judice, such proper foundation is clearly reflected in the record. Sgt. Dunbar thoroughly testified about his training and qualifications to perform the HGN test, and in detail described the technique he used when performing the HGN test on Penix. He further testified that he was trained under the NHTSA manual and believed he instructed Penix in a way substantially consistent with standardized procedure. A compromise in reliability that may be caused by a lack of strict compliance may be used by the defense to attack the evidentiary value of the HGN test *Page 10 
at trial, but it does not warrant suppression of such evidence. Accordingly, Penix's second assignment of error is without merit.
 {¶ 26} Penix's third assignment of error proposes:
 {¶ 27} "Whether the trial court erred in finding that the arresting officer had probable cause to arrest Appellant."
 {¶ 28} Penix's final assignment of error asserts that Sgt. Dunbar lacked probable cause to make an arrest. The standard for determining whether the police have probable cause to arrest an individual for driving under the influence is whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan,89 Ohio St. 3d 421, 427, 2000-Ohio-212, citing Beck v. Ohio (1964), 379 U.S. 89, 91; State v. Timson (1974), 38 Ohio St.2d 122, 127.
 {¶ 29} To the extent that the State seeks to use the results of a field sobriety test as a basis for probable cause to arrest, the police must have administered the test in substantial compliance with standardized testing procedures. Strongsville v. Troutman, 8th Dist. No. 88218, 2007-Ohio-1310, at ¶ 22, citing R.C. 4511.19. However, the totality of the circumstances can support a finding of probable cause to arrest, even where no field sobriety tests were administered.Homan, supra; see, also, State v. Miller (1997), 117 Ohio App. 3d 750,761; State v. Brandenburg (1987), 41 Ohio App. 3d 109, 111.
 {¶ 30} As we have previously determined, based on the evidence presented, Sgt. Dunbar substantially complied with the NHTSA guidelines for the administration of the *Page 11 
HGN test, which Penix failed. In addition, Sgt. Dunbar witnessed Penix traveling fifty-seven miles-per-hour in a forty miles-per-hour zone on snowy, wet road conditions at 1:51 a.m. on a Thursday morning. He observed an odor of alcohol emanating both from Penix's vehicle and from his person. He also testified that Penix admitted to drinking, and admitted that he had been at the Dusty Armadillo bar. Based on Sgt. Dunbar's testimony we find that the totality of facts and circumstances supported a finding of probable cause to arrest the appellant for driving under the influence of alcohol. Penix's final assignment of error is without merit.
 {¶ 31} Penix's three assignments of error are without merit, and for the reasons stated above, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
TIMOTHY P. CANNON, J., concurs,
COLLEEN MARY O'TOOLE, J., dissents with Dissenting Opinion.